Aaron J. Tolson, Esq.
TOLSON & WAYMENT, PLLC
2677 E. 17th Street, Suite 300
Ammon, Idaho, 83406
Email: ajt@aaronjtolsonlaw.com
Telephone: 208-228-5221
Fax: 208-228-5200
I.S.B. #6558

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-40974 |
| STEPHEN J. ANDERSON AND | ) | |
| MELANIE ANDERSON, | ) | Chapter 11 |
| | ) | |
| Debtors in Possession. | ) | |
| | ) | |

---

**DISCLOSURE STATEMENT**

---

      On October 23, 2018, Stephen & Melanie Anderson, the Debtors, filed their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Idaho. Pursuant to Section 1125 of the Code, the Debtor has obtained an order of the Court approving this Disclosure Statement for submission to the holders of claims against them.

<u>NOTICE TO CREDITORS OF STEPHEN & MELANIE ANDERSON</u>

      This is a simple case in that Debtors are trying to save their home and associated property from foreclosure, and there are many parties who have claimed an interest from time to time. If you believe you hold a claim against this individual Debtor you should read this document and apply it carefully as your rights are being affected in the Plan.

<u>INTRODUCTION</u>

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN OF

1 -    DISCLOSURE STATEMENT

REORGANIZATION. PLEASE READ THIS DOCUMENT WITH CARE.

The Debtor is providing this Disclosure Statement to all of his known creditors pursuant to Section 1125 of the Bankruptcy Code in order to permit such creditors to make an informed judgment in exercising their right to vote on the Plan of Reorganization. Section 1125 of the Bankruptcy Code requires that this Disclosure Statement be submitted to holders of claims against, and interests in, the Debtor, and that this Disclosure Statement contains sufficient information about the Debtor to enable creditors and other interested parties to make an informed decision regarding the Plan of Reorganization. The Disclosure Statement is required to be approved by the Court. The Debtor have complied with the requirements of Section 1125 of the Bankruptcy Code and the Disclosure Statement has been approved by the Court as containing adequate information.

THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

This Disclosure Statement is being furnished to all known creditors and claimants to inform them about the Plan and their rights with respect thereto. The only representations that are authorized by the Debtor concerning his finances and business operations, the value of Debtor' assets, his reorganization prospects, or other matters are the representations contained in this Disclosure Statement. The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent Certified Public Account. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy; however, great effort has been made to ensure that all such information is fairly represented.

In determining the acceptance of the Plan, votes will only be counted if submitted by the claimant whose claim is duly scheduled by the Debtor as undisputed, non-contingent, and liquidated, or who, prior to the hearing on confirmation has filed with the court a proof of claim which has not been disallowed or suspended prior to the computation of the vote on the plan. A class that is unimpaired is deemed to have accepted the plan if solicitation of acceptance is not required under Il USC 1126(f).

The ballot received from you does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should check Debtor's schedules, which are on file in the office of the Clerk of the United States Bankruptcy Court, U.S. Courthouse, Pocatello, Idaho. Due to the business of the Clerk of the Bankruptcy Court, it is believed that this information will not be given by telephone.
Pursuant to Bankruptcy Code Il USC 1129(b), the plan may be confirmed even if it is not accepted by one or all of the impaired classes, provided the Bankruptcy Court does not discriminate unfairly and the plan is fair and equitable to such class or classes.
Accompanying this Disclosure Statement are copies of the following documents:

2 -    DISCLOSURE STATEMENT

| | |
|---|---|
| APPENDIX A: | The Court's Order Approving Disclosure Statement pursuant to 11 USC §1125, and affixing the time for the filing of acceptances or rejections of the Plan of Reorganization and for a hearing on confirmation of the Plan of Reorganization. |
| APPENDIX B: | The Plan of Reorganization. |
| APPENDIX C: | The ballot form for acceptance or rejection of the Plan of Reorganization. |
| APPENDIX D: | Debtor' list of secured and unsecured claims, including any disputed claims. |
| APPENDIX E: | Debtor' Profit & Loss from 2017&2018; Debtor's Three Year Est. Budget. |
| APPENDIX F: | Annual tax returns. |
| APPENDIX G: | Monthly Operating Reports. |

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in this Plan of Reorganization and the Disclosure Statement shall have the following meanings:

ADMINISTRATIVE CLAIM: A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code. This includes any amounts due to the United States Trustee.

ALLOWED CLAIM: "Allowed Claim" shall mean a Claim: in respect of which a proof of Claim has been filed with the Court on or prior to the Bar Date: or which is scheduled in the Debtor' schedules of assets and liabilities and statement of financial affairs filed with the Court pursuant to §521 of the Bankruptcy Code and which has not been listed (or is no longer listed on the Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or in respect of which a proof of Claim has been filed with the Court pursuant to 5502(h) or 5502(i) of the Bankruptcy Code; and in any case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections have been interposed, the Claim has been allowed by order of the Court.

BANKRUPTCY CODE: "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U. S. C. 5101 et seq., and any amendments thereof.

CLAIMS: "Claim" shall mean any right to payment or right to an equitable remedy against Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

CLASS: "Class" shall mean any class into which Claims or Interests are classified pursuant to Article Il of the Plan.

CONFIRMATION DATE: The first business day occurring on or after the (14th) day after the Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such first business day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

CONTESTED CLAIM: "Contested Claim" shall mean any Claim which is listed on the schedules, filed by the Debtor as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code and which remains unresolved.

COURT: "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

DISPOSABLE INCOME: "Disposable Income" shall mean the current income Debtor receives, less amounts reasonably necessary to be excluded for Debtor's maintenance and less the payment for expenditures necessary for the continuation, presentation and operation of Debtor's business.

DISPUTED CLAIM: The "Disputed Claim" shall mean a claim either scheduled or filed as a claim, which the Debtor alleges that he is not obligated to pay.

EFFECTIVE DATE: The effective date of the Plan shall be the Confirmation Date as that term is defined above.

PLAN TERM: The Plan Term shall mean the time period defined in Article VI of the Plan.

PERSON: "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

REVENUE CODE: "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. 1 et seq.

)

## GENERAL HISTORY OF THE DEBTOR

The Debtors, Stephen & Melanie Anderson, both went through difficult divorces but have rebuilt a family together. They work hard in Real Estate and nursing and enjoy good reputations in their professional and personal endeavors.

Debtors had to file a Chapter 7 bankruptcy in September 9, 2015 due to a crushing amount of debt from health and other problems in raising a large family with a bitter divorce with minor children as a backdrop. In the chapter 7, the debtors inadvertently did not disclose a number of real estate contracts, as they considered them as in the ordinary course of their real estate business. After litigation with the Chapter 7 Trustee, the court determined that the contracts were personal to the debtors and required approximately a $52,000 reimbursement to the estate. Debtors did not have the money to pay on the order to the estate. There is also approximately $18,000 in the prior Chapter 7 case to be distributed to creditors.

Debtors extensively tried to reach a payment plan and otherwise settle, while also firmly believing that the case was determined incorrectly. Debtors appealed to the BAP, which after oral argument also found against them. The 9th circuit sent a mediator out, but this did not work either to resolve the dispute. Finally a writ of certiaori to the US Supreme Court was denied as well. After exhausting these options, the Trustee in the Chapter 7 asked the court to revoke the discharge for failing to pay on the original order. The non-dischargeable debts are thus included in this chapter 11, which include family support obligations.

In the family law case, Debtor Steve Anderson now has custody of his children and they are close to determining final amounts owed for domestic support obligations based on some discovery ongoing with the business, which the debtors have committed to pay. That case is set to be finished in April 2020 if a trial is necessary. The business is paying for the litigation since the case is about the business records at this point. This is important as a non-dischargeability case about domestic support obligations in case 18-08038 was resolved by stipulation and granted summary judgment and it is scheduled to be paid in this instant Chapter 11 case.

Debtor Steve Anderson has a real estate business with Keller Williams, the largest real estate business in the area, which he has done for 20 years. That business generates approximately $20,000 a month. Debtor Melanie Anderson is working as a nurse making $5,000 a month, and helping with the real estate business as well. So they are working with approximately $300,000 a year in gross income with which to pay creditors.

Events Leading up to Bankruptcy: The Debtor filed his Voluntary Petition for relief under the Bankruptcy Code on October 23, 2018. A Meeting of Creditors pursuant to 11 U.S.C. 341(a) was held. Although no formal request "for cause" has been filed for the non-formation of a creditors committee, to date the United States Trustee has declined to form a creditors committee, due to a lack of demonstrated interest by creditors. At the time of filing of this Disclosure Statement, no Notice of Non-Appointment of Unsecured Creditors Committee has been filed by the U.S. Trustee's

office with the Bankruptcy Court.

Debtors originally purchased a home with the financing help of Connie Morris, debtor Melanie Anderson's mother, which was later sold and the funds invested in 2683 Legends Circle. Debtors provided all money and payments on the indebtedness and will own 2683 Legends Circle as their Idaho homestead property after making required payments, and making repairs which have lowered the house value approximately $25,000. Gary Rainsdon, the prior Chapter 7 Trustee, is seeking to take the property or an equivalent value, which will be contested by debtors and Connie Morris. Any disputes with the property ownership will be settled in the court proceeding.

## MAJOR ASSET DISPOSITIONS

No major assets have been voluntarily disposed of by Debtor, except in the ordinary course of the Debtor's business or as authorized by the Court.

## LEASEHOLD INTERESTS/EXECUTORY CONTRACTS

The Debtors have the interests as listed in the accompanying plan.

## PENDING LEGAL PROCEEDINGS

State Court and Federal Court Actions (Including Bankruptcy Proceedings):

## STATEMENT

| Caption | Nature of Case | Location |
|---|---|---|
| Stephen Anderson v. Tanice Anderson | Civil | Bonneville County, ID |

Claims that may be Contested: Some claims may later be contested which may increase the pro rata distribution to unsecured creditors. Many of these potential claim objections are addressed under the terms of the Plan and need only be addressed should creditors disagree with the Plan. For example, the 506 valuation of collateral objections can be determined as a part of the confirmation process without the necessity of incurring exorbitant legal fees and costs, and otherwise stipulated to in the existing plan treatment stipulation(s), as noted in the Plan. The Plan does not prevent other interested parties from asserting claim objections on their own behalf. Claims that may be contested include, by way of illustration and not limitation, the following:

The Debtor reserves all rights to determine in his business judgment whether a claim objection is a prudent course of action, particularly in light of the administrative priority of attorney fees. The Debtor reserves all rights to contest any additional claims not listed above and to amend their schedules as the Debtor deems advisable.

## PREFERENCES, FRAUDULENT CONVEYANCES, AND LIEN AVOIDANCE

Debtor may avoid liens of any improper secured creditor. There are no preferences or fraudulent conveyances that debtor is aware of.

## BASIS OF VALUATION

The basis of the valuation of property contained in the liquidation analysis, or best interest of creditors test, was obtained primarily from the opinions of the Debtor.

IT SHOULD BE BORNE IN MIND THAT THIS ANALYSIS IS ONLY THE BEST ESTMATE OF THE DEBTOR AND THAT ENTIRETY OF THE DEBTOR'S ASSETS WOULD BE LIQUIDATED AND THIS SORT OF ACTIVITY WILL REDUCE THE LIQUIDATION VALUE OF THE ESTATE.

## LIQUIDATION ANALYSIS ( "Best Interests of Creditors Test" )

Notwithstanding acceptance of the Plan by creditors, in order to confirm the Plan the Court must independently determine that the Plan is in the best interests of all classes of creditors and stockholders. The "best interest" test requires that the Court find that the Plan provides to each member of each impaired class of claims and interest a recovery.

## STATEMENT REGARDING BEST INTEREST

To calculate what members of each impaired class of unsecured claims or interest would receive if the Debtor were liquidated, the Court must first determine the dollar amount that would be generated from the disposition or liquidation of the assets of the Debtor in excess of the amount necessary to pay allowed secured claims, plus the cash held by the Debtor, and plus recoveries on actions against third parties. The proceeds of this liquidation will then be reduced by the costs of the liquidation. Such a liquidation would probably take place in a Chapter 7 proceeding and such a proceeding would likely include the fees of a trustee as well as those of counsel and other professionals that might be retained by such trustee, selling expenses (including costs of advertising and auctioneer's fees or brokerage commissions), unpaid expenses incurred by the Debtor during their reorganization proceedings under Chapter 11, and claims arising by rejection by the trustee of obligations incurred by the Debtor during the pendency of the Chapter 11 case.

The value of the distributions after liquidation, deduction of costs of liquidation, and in keeping with the analysis described above would then be compared by the Court with the present value being offered to each of the classes of unsecured claims and interests under the Plan. The Debtor also believes that secured and unsecured claims in a liquidation would be significantly greater than under the contemplated plan.

The Debtor also believes that liquidation of the Debtor's estate would be a time consuming matter and might involve litigation between a Chapter 7 trustee and the various claimants to assets

of the estate. It would not be unusual that no distribution to unsecured creditors in a Chapter 7 liquidation proceeding would be forthcoming for one or more years.

THE DEBTOR FIRMLY BELIEVES THAT PLAN IS IN THE BEST INTERESTS OF EACH CLASS OF CREDITORS AND THAT CREDITORS WILL RECEIVE A LARGER AND QUICKER DISTRIBUTION UNDER THIS PLAN OF REORGANIZATION THAN THEY WOULD IF THE DEBTOR'S ESTATE WERE LIQUIDATED.

The following pages set forth assets, liabilities and estimated expenses Debtor is using to calculate his liquidation analysis.

| REAL PROPERTY ASSETS | | | | |
|---|---|---|---|---|
| Description | FMV | Encumbrances | Exemptions | Available |
| Debtor's Residence | $430,000.00 | $395,000.00 | 100% | $0.00 |
| PERSONAL PROPERTY ASSETS | | | | |
| Household Items | 10,000 | 10,000 | 100% | $0.00 |
| Cars | 28,000 | 27,000 | 100% | $0.00 |
| Business Interests | 10,000 | 10,000 | 0 | $0.00 |
| Bank Accounts* | $500 | 0 | 0 | $500.00 |

*Account balance as of October, 2018.

LIABILITIES
INDEBTEDNESS AMOUNT OF DEBT

    ASSERTED SECURED CLAIMS
                                                 $81,944.49

    TOTAL SECURED CLAIMS:      $81,944.49

    PRIORITY CREDITORS :        $92,310.47

    ADMINISTRATIVE CLAIMS (est.) $ 30,000.00 (This is an estimate of debtor's attorney Aaron J. Tolson's fee which will be sought for approval at a later time. There are no other administrative professionals.)

    TOTAL PRIORITY CLAIMS:      $122,310.47

    GEN. UNS. CLAIMS:           $280,760.35

8 -    DISCLOSURE STATEMENT

    TOTAL GEN. UNS. CLAIMS:    $280,760.35

    TOTAL CLAIMS:    $403,070.82

    NET DIFFERENCE:    $122,310.485

This Disclosure Statement shows that General Unsecured Creditors would not be paid in full, if at all, in the event of a Chapter 7 liquidation. The "Net Difference" represents the estimated value available to other claims of that Chapter 7 estate and to the Debtor-in-possession. The total amount of unsecured claims listed in Appendix "D" is $280,760.35. Additionally, please note that the "Net Difference" does not quantify the costs of liquidation of the estate by a Chapter 7 Trustee.

It is the Debtor' considered opinion unsecured creditors would most likely receive a distribution that would be less than 1% in a chapter 7 liquidation, and the Debtor's Plan provides for significantly more. The Plan provides over the five (5) year term for a distribution of a projected $139,011.88 to general unsecured creditors, including priority, representing approximately a 50% distribution of the Total Gen. Uns. Claims noted above. To the extent undersecured creditors file timely, amended proofs of claim under applicable state laws allowing for deficiency claims, if applicable, this percentage would be reduced accordingly, To the extent any unsecured claims are disallowed, this percentage would be increased accordingly.

The books and records of the Debtor are largely in the possession of Debtor.

This amount is the total amount of general unsecured claims without taking into account the anticipated claim objections. The Debtor' Plan is simple. The Plan provides for a set payment to all classes after the Plan is confirmed as listed in the plan. The Plan also affords the Debtor the right to prepay as his circumstances may allow. Unsecured creditors also have the right, under the Plan, to request annual tax returns from the Debtor and his counsel, if they submit a written request annually. See Plan, Paragraph IV.3.B at p. 8.

## CONFIRMATION OF THE PLAN

Voting Procedure: All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating and signing the "Ballot for Accepting or Rejecting Plan of Reorganization" attached to this Disclosure Statement as Appendix C.

THE BALLOT MUST BE SERVED ON THE PLAN BY DEBTOR'S ATTORNEY BY MAILING SUCH BALLOT TO TOLSON & WAYMENT PLLC, 2677 E. 17th #300, Ammon, ID 83406. IN ORDER TO BE COUNTED ALL BALLOTS MUST BE RECEIVED BY DEBTOR'S COUNSEL PRIOR TO 5:00 O'CLOCK P.M. ON THE DATE SPECIFIED IN THE ORDER APPROVING THE Debtor' DISCLOSURE STATEMENT.

)    Persons Entitled to Vote on Plan: Only the votes of classes of creditors whose claims or interests are impaired by the Plan of Reorganization will be counted in connection with confirmation

9 -    DISCLOSURE STATEMENT

of the Plan of Reorganization. Generally, and subject to the specific provisions of 1124 of the Bankruptcy Code, this includes any creditor who, under the Plan, will receive less than payment in full in cash of the allowed amount of their respective claims on the effective date of the Plan. It appears to the Debtor that all claims are impaired. See Article III and Article IV of the proposed Plan. In determining acceptance of the Plan, votes will be counted only if submitted by a creditor whose claim is scheduled by the Debtor as undisputed, non-contingent and liquidated, or who, prior to the hearing on confirmation, has filed with the Bankruptcy Court a Proof of Claim which has not been disallowed, disqualified or suspended prior to computation of the vote on the Plan. The ballot which accompanies this Disclosure Statement does not constitute a Proof of Claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's schedules which are on file with, and may be inspected at, the U.S. Bankruptcy Court, 801 E. Sherman Street, Pocatello, ID 83201.

Acceptances May Not be Necessary to Confirm Plan: Under §1126 of the Bankruptcy Code an impaired class is deemed to have accepted the Plan if (l) at least 2/3 in amount and (2) more than 1/2 in number of the allowed claims or interests of class members who have voted on the Plan have voted to accept it. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must also determine that under the Plan such class members will receive property of value, as of the effective date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan. Even if all classes of claims or interests accept the Plan, the Court may refuse to confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and there are other provisions therein which may affect confirmation exclusive of the votes of creditors.

Confirmation of Plan Without Acceptances: The Court may confirm a Plan even though less than all of the classes of claims or interests accepts the Plan.

The circumstances under which the Court may confirm a Plan over the objection of a class of claims or interests are set forth in of the Bankruptcy Code. This section provides that the Court may confirm a Plan notwithstanding its rejection by one or more impaired classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class which does not accept the Plan. With respect to classes of secured creditors, the fair and equitable test requires that a secured creditor (l) retain its lien and receive cash payments having a present value equal to its allowed secured claim, and (2) receive the proceeds of the sale of its collateral, or (3) realize the indubitable equivalent of its claim to the extent validly secured.

With respect to a class of unsecured claims, the fair and equitable test requires that if each creditor in such class does not receive property having a present value equal to the amount of such creditors allowed claim, no junior class can receive or retain any property. The Debtor of the Plan will rely on the features of 1129(b) in the event there is a rejection of the Plan by a class of claims or interests. The invocation of the provision of 1129(b) is a legal matter required to be heard by the court at the confirmation hearing or at a hearing set by the court.

10 -    DISCLOSURE STATEMENT

In this case, the Debtor's Plan provides that upon confirmation the Debtor's prepetition assets will be vested in the Debtor, subject to the repayment terms in the Plan. If the Debtor does not obtain the necessary votes, the Plan may not satisfy 1129(b), also known as the Absolute Priority Rule, and the Debtor may not be able to confirm his Plan. In other words, without the necessary votes the individual Debtor may not cram down a plan that permits the Debtor to retain prepetition property that is not excluded from the bankruptcy estate under 11 U.S.C. 541. If unsecured creditors do not accept the Plan, the parties may be left with either liquidation or an amended plan as the alternatives. It is uncertain what an amended plan would provide. It is the Debtor's considered opinion that the current Plan provides more than a liquidation for unsecured creditors and represents the best alternative for all parties.

Consequences of Confirming the Plan: Confirmation of the Plan will not discharge the Debtor from the debts provided in the plan; confirmation makes the Plan binding upon the Debtor, creditors and other parties in interest regardless of whether they have accepted or rejected the Plan. Confirmation of the Plan will, generally, provide for the distribution of value to the creditors as set forth in the Plan. The Plan will not be final by liquidation because the one Creditor will be satisfied.

Hearing on Confirmation of the Plan: The Bankruptcy court has set a hearing date to determine whether the Plan has or will be accepted and whether the other requirements for confirmation of the Plan have been satisfied. A time for hearing for confirmation of the Plan has been established in Appendix "A" hereto and each creditor and shareholder should make note of that Notice of Hearing and determine whether or not they want to attend. Attendance is not mandatory to establish a claim.

Also, as also set forth in Appendix "A", all ballots must be timely filed with the Bankruptcy Court as outlined in Appendix "A."

Retention of Jurisdiction: If the Plan is confirmed by the Bankruptcy Court, it will retain jurisdiction, as more specifically set out in the Plan, to adjudicate the allowance of claims, the value of secured interests, the disposition of executory contracts or unexpired leases, the avoidance of liens or transfers, litigation concerning claims and property of the estate, rule on modifications of the Plan if any, and to issue such orders and judgments as may be necessary to implement the Plan and resolve disputes concerning the Plan.

A default in the plan will occur if the payments required in the plan are not made. The debtors will pay the required amounts to each creditor divided by 5 each year on the anniversary of the plan confirmation for the 5 plan years. In the event of a default, creditors must notify debtor through their attorney and if the default is not remedied within 20 days, the creditor will have the right to pursue all remedies at law. If there is a conversion to Chapter 7, all property of debtors not subject to Gary Rainsdon's prior Chapter 7 estate administration would be available to any new Chapter 7 Trustee. Debtors seek a final decree on or before March 31, 2020.

11 -     DISCLOSURE STATEMENT

## BANKRUPTCY SCHEDULES

This Disclosure Statement is meant to disclose all of the assets and liabilities of the Debtor, To the extent it contradicts the bankruptcy schedules on file with the Bankruptcy Court the disclosures contained in this Disclosure Statement and Appendices control.

DATED this ___ day of October, 2019.

_____
Stephen J. Anderson

_____
Melanie Anderson